Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

**Dated: September 28th, 2018**

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF WEST VIRGINIA
### AT CHARLESTON

| | |
|---|---|
| IN RE:<br><br>ANNETTE LEE GOOD,<br><br>               Debtor. | CASE NO. 2:15-bk-20635<br><br>CHAPTER 13<br><br>JUDGE FRANK W. VOLK |
| ANNETTE LEE GOOD,<br><br>               Plaintiff,<br>v.<br><br>ATTORNEY CLIENT SERVICES, aka<br>LAW OFFICE OF RONALD M. ORGAN,<br>ESQ., a New York registered business, and<br>APRYLL H. BOGGS, ESQ.,<br><br>               Defendants. | ADVERSARY PROCEEDING NO.<br>2:16-ap-02031 |

### <u>MEMORANDUM OPINION AND ORDER</u>

On March 6, 2018, the Court granted summary judgment to Plaintiff Annette Lee

Good against Defendant Apryll H. Boggs on Counts One, Two and Three of the Complaint [Dckt.

82]. Now, the Court further **ORDERS** that default be, and hereby is, entered against the co-

Defendant, Attorney Client Services, aka, Law Office of Ronald M. Organ, Esq. ("Law Firm"),

inasmuch as it has never appeared in this action.

On April 4, 2018, the Court held an evidentiary hearing to adjudicate the damages, if any, to which Ms. Good was entitled upon Counts One, Two and Three. The Court now enters its findings of fact and conclusions of law under the standards of proof applicable to each Count.

## I.

### A.   Factual Background

In December 2015, the mortgage holder sent Ms. Good a notice of foreclosure. The sale date was set for December 17, 2015. Ms. Good alleged that she entered into an agreement with the Defendants for legal services designed to (1) seek modification of her mortgage and (2) defend any foreclosure action. She paid the Defendants approximately $7,800 for a retainer. For this princely sum the Defendants accomplished only the drafting of a quitclaim deed and advised Ms. Good to declare bankruptcy. Ms. Good filed her a Chapter 13 petition on December 11, 2015.

On March 6, 2016, Ms. Good instituted an adversary proceeding against the Law Firm and Ms. Boggs. Ms. Good accused the Defendants of fumbling her mortgage modification efforts and engaging in an obscure pattern of requesting documentation from her for loan modification purposes. In reality, no documents that she sent to the Defendants were submitted to the lender.

In her Complaint, Ms. Good alleged four (4) counts against the Defendants, which are more fully discussed below. Ms. Boggs was served with process several times along the way.[1] She and the Law Firm were first served on March 7, 2016, with a response due on or before April

---

[1] Inasmuch as no response has been received from the Law Office, the Clerk is directed to enter default today, *nunc pro tunc* to May 7, 2016.

5, 2016 [Dckt. 2].  No response was filed by either. Ms. Good requested that a new summons be issued using a new address.  On April 6, 2016, Ms. Boggs was served a second time, with a response due on or before May 6, 2016 [Dckt. 7].  Ms. Boggs filed no response.  Ms. Boggs was served a third time on June 17, 2016, with a response due on or before July 18, 2016 [Dckt. 12]. Again, no response was filed.

On August 16, 2016, Ms. Good moved to serve Ms. Boggs by publication [Dckt. 14]. The Court granted Ms. Good's motion on October 5, 2016, resulting in a fourth and final attempt at service, this time by publication, on November 20, 2016. A response was due December 20, 2016.  No response was received.

After correcting a procedural error that is not material for present purposes, Ms. Good filed a Motion for Entry of Default against Ms. Boggs on February 7, 2017 [Dckt. 33].  On February 10, 2017, the Clerk entered default against Ms. Boggs [Dckt. 35]. Ms. Good then moved for default judgment against Ms. Boggs [Dckt. 36].  The Court granted default judgment as requested on February 27, 2017 [Dckt. 40].

On March 22, 2017, Ms. Boggs materialized by sheer happenstance inasmuch as she was in the courtroom on another matter when the Court called for a damages hearing to ascertain the compensation to which Ms. Good was entitled on default judgment. The inquiry did not proceed. Ms. Boggs was instead permitted to file a late Motion to Set Aside Default and Judgment by Default [Dckt. 49]. The Court ultimately granted Ms. Boggs' Motion to Set Aside Default on May 5, 2017 [Dckt. 59]. In its May 5, 2017, written opinion and order granting the Motion to Set Aside Default, the Court emphasized the desirability of adjudicating cases on their merits.

3

A scheduling order was entered on May 8, 2017, setting deadlines for discovery (August 16, 2017), dispositive motions (September 15, 2017), a settlement conference (October 16, 2017), and trial (October 24, 2017) [Dckt. 61].   The settlement conference and trial were ultimately rescheduled for January 16 and 24, 2018, respectively.

On September 15, 2017, Ms. Good moved for summary judgment [Dckt. 72]. Ms. Boggs absented herself from the January 16, 2018, settlement conference. The Court ordered Ms. Boggs to respond to the summary judgment motion by February 26, 2018 [Dckt. 78]. She did not comply. On March 6, 2018, the Court granted summary judgment, in part, to Ms. Good and set an evidentiary hearing to adjudicate the damages to which Ms. Good was entitled on Counts One, Two and Three.  The hearing was held April 4, 2018, with the Court granting leave for Ms. Good's counsel, Megan Patrick, to request attorney and accountant fees within fourteen (14) days. Ms. Good filed the aforementioned requests on April 18, 2018 [Dckt. 86].

## B.     The Complaint

### 1.   Count One -- Violation of the Consumer Credit and Protection Act

Ms. Good accuses the Defendants of violating the West Virginia Consumer Credit and Protection Act ("WVCCPA").  Specifically, Ms. Good alleges the Defendants, *inter alia*, (1) caused confusion of, or misunderstanding as to, the affiliation, connection or association between Ms. Boggs and Law Firm and (2) engaged in other conduct, which similarly created a likelihood of confusion or misunderstanding.

### 2. Count Two -- Common Law Negligence

Ms. Good also alleges the Defendant were negligent.  She contends the Defendants (1) breached their duty of care in working to modify her mortgage, (2) forced Ms. Good to file bankruptcy to save her home from foreclosure, (3) caused her to spend additional sums to file bankruptcy, and (4) generally caused her annoyance and embarrassment.

### 3. Count Three-- Intentional Infliction of Emotional Distress

Ms. Good alleges the Defendants intentionally inflicted emotional distress upon her by (1) falsely assuring her they were working on a loan modification and (2) permitting her home to fall into foreclosure without adequate defense.[2]

### 4. The Damages Sought

Ms. Good seeks (i) actual damages for the violations of the WVCCPA as authorized by *West Virginia Code* § 46A-5-101(1) for all such violations that occurred up to the date and time of the filing of her complaint; (ii) statutory damages in the maximum amount authorized by *West Virginia Code* § 46A-5-101(1), as adjusted for inflation pursuant to *West Virginia Code* § 46A-5-106 for all such violations that occurred up to the date and time of the filing of her complaint; (iii) her costs of litigation, including attorney fees, court costs and fees, pursuant to *West Virginia Code* § 46A-5-104; (iv) general damages for the Defendants' negligence as alleged in Count Two; (v)

---

[2]  It is noted that Ms. Good alleged a claim in Count Four for "Violations of the West Virginia Rules of Professional Conduct." The Court dismissed that claim on March 6, 2018.

general damages and punitive damages for the Defendants' conduct alleged in Count Three; and

(vi) such other relief as the Court shall deem just and proper under the circumstances.

As noted, a hearing was held on April 4, 2018 to adjudicate the damages to which

Ms. Good is entitled on Counts One through Three. No one appeared for the Law Firm or Ms.

Boggs.  Ms. Good testified that between March of 2014 and December of 2015, she spoke with

Ms. Boggs maybe once and that all correspondence was through the Law Firm.  She explained

that the correspondence usually involved gathering information in the form of pay stubs, utility

bills, and other documents.  Ms. Good testified that during the Law Firm's representation, she

was always led to believe that she would receive a loan modification and that she was to refrain

from making payments on her mortgage until the refinancing was over.

Ms. Good also testified that in December of 2015, she received a phone call from a

manager at the Law Firm saying that she would need to find new representation inasmuch as

neither the Law Firm nor Ms. Boggs could assist her any further.  Ms. Good also noted that the

caller told her (1) the home was being put up for sale on the following Wednesday, and (2) the

arrearage on her mortgage had accumulated to roughly $32,000.  This shocking information led

Ms. Good to file bankruptcy.  As a result of her bankruptcy proceeding, Ms. Good surrendered her

home to the lender and moved elsewhere.

Ms. Good testified that she missed approximately two weeks of work to move into

a new home, along with preparing her bankruptcy and adversary proceeding. Her annual salary,

based on Schedule I from her bankruptcy proceeding, indicates she earns approximately $46,000

[BK Dckt. 1]. The Court accepts this lower figure rather than the slightly higher sum to which she

testified.

Ms. Good also testified concerning the effect that her bankruptcy proceeding has had on her life, along with the emotional well-being of herself and her children. She explained that her youngest child has to see a therapist and psychiatrist for depression and anxiety and is prescribed four (4) medications to treat the disorders. She also noted, *inter alia*, that the duration of her bankruptcy proceeding caused her to have to delay financial plans and purchases.  For example, the increased cost of her living arrangements that resulted from the foreclosure and bankruptcy are more than she would have had to pay on her original monthly loan obligation. Further, Ms. Good's bankruptcy case will appear on her credit report for seven (7) years.

## II.

Inasmuch as default will be entered against the Law Firm today, and that summary judgment has been granted on Counts One, Two, and Three, the only extant issue is the amount of damages [Dckt. 82]. The damages sought are statutory, general, special, and punitive. In accordance with the WVCCPA, Ms. Good is entitled to general damages, special damages, and statutory damages. W. Va. Code § 46A-5-101(1).

With statutory damages, Ms. Good can recover from Ms. Boggs a penalty of $1,000 per violation. W. Va. Code § 46A-5-101(1). Ms. Boggs committed three violations, namely, (1) passing off services as those of another, (2) causing confusion or misunderstanding as to the affiliation, connection or association between Ms. Boggs and the Law Firm, and (3) engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding [Dckt 1]. Therefore, Ms. Good is awarded $3,000 in statutory damages. W. Va. Code § 46A-5-101(1).

General damages include "pain and suffering, diminished ability to engage in normal activities, loss of enjoyment of life, and mental anguish." *Adams v. Parsons*, Civil Action

No. 2:10-0423, 2013 U.S. Dist. LEXIS 18789 at *9 (S.D. W. Va. 2013) (unpublished). General

damages do not need to be alleged in detail and require no proof, *FAA v. Cooper*, 566 U.S. 284,

296 (2012) (quoting 1 D. Haggard, *Cooley on Torts* §164, p. 579 (4th ed. 1932)). Inasmuch as the

"task of awarding general damages is a uniquely human endeavor," it is up to the Court to

"consider the host of factors unique to each individual case" and "to draw upon the virtually

unlimited factors unique to us as human beings." *Wilt v. Buracker*, 191 W. Va. 39, 49, 443 S.E.2d

196, 206 (1993). Having considered the evidenced produced at the hearing, the Court finds that

Ms. Good has proven by a preponderance of the evidence general damages in the sum of $10,000

is warranted.

Special damages include "lost wages and income, medical expenses, damages to

tangible personal property and similar out-of-pocket expenditures, as determined by the court."

W. Va. Code § 56-6-31(b). This also includes costs of litigation, such as "reasonable attorney fees,

court costs and fees," in claims under the WVCCPA. W. Va. Code § 46A-5-104. Thus, Ms. Good's

requests for attorney fees, costs and expenses are recoverable, in the respective sums of $12,075.31

and $497.74, totaling up to $12,573.05. She is additionally awarded the $7,800.00 retainer paid to

the Defendants. [Dckt. 86]. In total, Ms. Good has proven special damages by a preponderance of

the evidence in the amount of $20,373.05. This sum, combined with the $3,000 in statutory

damages and $10,000 in general damages, results in a compensatory damage award of

$33,373.05.

Ms. Good is also entitled to punitive damages. While a showing of "simple

negligence," is insufficient to receive a punitive damages award in West Virginia, Ms. Good has

proven by clear and convincing evidence that the Defendants engaged in "willful, wanton, reckless

or malicious act[s]." *Bennett v. 3 C Coal Co.*, 379 S.E.2d 388, 394 (W.Va. 1989) (quoting *Wells*

8

*v. Smith*, 297 S.E.2d 872, 875 (W.Va. 1983), *overruled on other grounds by Garnes v. Fleming*

*Landfill, Inc.*, 413 S.E.2d 897, 908 (W.Va.1991) (internal quotation marks omitted)). A fact finder

may award punitive damages "by way of punishment for wilfulness, wantonness, malice, or other

like aggravation of his wrong to the plaintiff, over and above full compensation for all injuries

directly or indirectly resulting from such wrong." Syl. pt. 4, *Harless v. First Nat'l Bank in*

*Fairmont*, 289 S.E.2d 692, 702 (W.Va.1982) (quoting Syl. pt. 1, *O'Brien v. Snodgrass*, 16 S.E.2d

621, 621 (W.Va.1941)).

There are several factors to consider in awarding punitive damages: (1) whether

punitive damages bear a reasonable relationship to the harm that is likely to occur from the

defendant's conduct as well as to the harm that actually has occurred; (2) how long the defendant

continued in his actions; (3) whether the defendant was aware his actions were causing or were

likely to cause harm; (4) whether the defendant attempted to conceal or cover up his actions or the

harm caused by them; (5) whether or how often  the defendant engaged in similar conduct in the

past; (6) whether the defendant made reasonable efforts to make amends by offering a fair and

prompt settlement for actual harm caused once liability became clear to him; (7) if the defendant

profited from his wrongful conduct; (8) whether punitive damages bear a reasonable relationship

to compensatory damages; (9) the financial position of the defendant; (10) the cost of litigation;

(11) any criminal sanctions imposed on the defendant for his conduct; (12) any other civil actions

against the defendant based on the same conduct; (13) the appropriateness of punitive damage to

encourage fair and reasonable settlements when a clear wrong has been committed. *Garnes*, 413

S.E.2d at 909.

It has been demonstrated, by clear and convincing evidence, that the Defendants

calculated misconduct, part of which consisted of an unwarranted $7,800 retainer fee with no legal

services rendered in return, misled Ms. Good and ultimately resulted in her filing bankruptcy. She and her children suffered from emotional and financial harm. After being paid, the Defendants provided no materially beneficial services to Ms. Good for at least twenty-one (21) months. Defendants knew Ms. Good's precarious financial position and fully appreciated the harm their actions and advice would cause. Defendants were also aware of this litigation that was designed to seek fair recompense for their misdeeds, but essentially delayed and/or absented themselves from participating, ignoring the lawful processes of this Court and further forcing Ms. Good to expend more family resources herein. Having considered the balance of harms alleged and the serious nature of the Defendants' misconduct, this Court awards $50,000 in punitive damages to Ms. Good.

Accordingly, it is **ORDERED** and **ADJUDGED** that the plaintiff, Ms. Good, take the sum of $3,000 in statutory damages, $30,373.05 in compensatory damages, and $50,000 in punitive damages, for total of $83,373.05 against the Defendants jointly and severally, in this action, and that judgment be, and it hereby is, **ENTERED** in favor of plaintiff, Ms. Good, with costs and interest as allowed by law.

It is further **ORDERED** that Ms. Good be, and hereby is, given leave, on or before October 20, 2018, to submit a proposed Judgment and Dismissal Order reflecting the above sums.